UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------X
WILLIAM ALVAREZ,

        Plaintiff,

-against-

C.O. CALEB BAUSE,
C.O. SKYLER TUTTLE,
C.O. ANTHONY FARINA,
C.O. MICHAEL BABICZ and
SGT. GLENN TROMBLY,

        Defendants.
---------------------------------X

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

9:22-cv-186
(LEK/DJS)

Plaintiff, by his attorneys Sivin, Miller & Roche, LLP, complaining of defendants, alleges as follows, upon information and belief:

## THE PARTIES AND JURISDICTION

1. That at all times herein mentioned, plaintiff was and is a citizen of the State of New York.

2. That at all times herein mentioned, plaintiff was incarcerated at Marcy Correctional Facility (Marcy), in Marcy, NY, a medium security correctional facility, and was under the care, custody, and control of the New York Department of Corrections and Community Supervision (DOCCS).

3. That at all times herein mentioned, defendants were and are citizens of the State of New York.

4. That at all times herein mentioned, defendant C.O. Caleb Bause (Bause) was a correction officer employed at Marcy by DOCCS.

5. That at all times herein mentioned, Bause was acting within the course and scope of his employment as a DOCCS correction officer.

6. That at all times herein mentioned, Bause was acting under color of state law.

7. That at all times herein mentioned, defendant C.O. Skyler Tuttle (Tuttle) was a correction officer employed at Marcy by DOCCS.

8. That at all times herein mentioned, Tuttle was acting within the course and scope of his employment as a DOCCS correction officer.

9. That at all times herein mentioned, Tuttle was acting under color of state law.

10. That at all times herein mentioned, defendant C.O. Anthony Farina (Farina) was a correction officer employed at Marcy by DOCCS.

11. That at all times herein mentioned, Farina was acting within the course and scope of his employment as a DOCCS correction officer.

12. That at all times herein mentioned, Farina was acting under color of state law.

13. That at all times herein mentioned, defendant C.O. Michael Babicz (Babicz) was a correction officer employed at Marcy by DOCCS.

14. That at all times herein mentioned, Babicz was acting within the course and scope of his employment as a DOCCS correction officer.

15. That at all times herein mentioned, Babicz was acting under color of state law.

16. That at all times herein mentioned, defendant Sgt. Glenn Trombly (Trombly) was a sergeant employed at Marcy by DOCCS.

17. That at all times herein mentioned, Trombly was acting within the course and scope of his employment as a DOCCS sergeant.

18. That at all times herein mentioned, Trombly was acting under color of state law.

19. That this Court has jurisdiction over this action in that the action arises under 42 USC § 1983 and alleges violations of plaintiff's civil rights, including rights guaranteed under the Eighth Amendment and Fourteenth Amendment to the United States Constitution.

20. That venue is proper in the Northern District of New York, which is where the events underlying this lawsuit occurred.

## THE FACTS

21. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

22. On September 25, 2020, inside the F-1 dorm of Marcy, plaintiff and Bause engaged in an acrimonious verbal exchange of words stemming from Bause's directive to plaintiff to stop talking or to lower his voice when speaking with another individual incarcerated in the dorm.

23. Later that day, Bause ordered plaintiff to clean the floors of the bathroom shower of the dorm, and plaintiff obeyed Bause's order and began cleaning the bathroom shower area.

24. While plaintiff was cleaning the bathroom shower area, Bause entered the area and called out plaintiff's name in an apparent attempt to get plaintiff's attention; however, plaintiff did not respond to Bause.

25. Shortly thereafter, Bause again called out plaintiff's name, and this time plaintiff responded by turning around and facing Bause.

26. When plaintiff turned around, Bause, without any legal provocation or justification, discharged chemical spray in plaintiff's face.

27. After being sprayed with the chemical spray, plaintiff ran out of the bathroom into the main dorm area in an attempt to avoid any further attack by Bause and to be in a position where others could witness what Bause was doing to plaintiff.

28. Bause then followed plaintiff into the main dorm area, ordered the other individuals incarcerated in the dorm to return to their sleeping quarters, and ordered plaintiff to step into a vestibule located at the entrance of the dorm.

29. Plaintiff complied with Bause's order, but Bause nevertheless activated his personal alarm system, thereby summoning other officers to respond to the scene.

30. In response to Bause's activation of his personal alarm system, Tuttle, Farina, Babicz, and Trombly arrived in the vestibule.

31. After the other officers arrived at the vestibule, Bause announced to them that he had activated his personal alarm because plaintiff, who at that point was facing and had his hands up against a wall in the vestibule, had attacked Bause.

32. In response to Bause's statement, Tuttle then slammed plaintiff's head against the wall multiple times, and placed plaintiff in handcuffs.

33. After being handcuffed, plaintiff fell to the ground, whereupon he felt himself being kicked multiple times in the head and body.

34. Although plaintiff was not able to identify which of the responding officers administered the kicks, none of the defendants, all of whom were inside the vestibule, intervened or attempted to intervene in any manner to prevent or stop those kicks from being administered.

35. That after being beaten in the vestibule, plaintiff was dragged into a van and transported to the prison infirmary.

36. Accompanying plaintiff in the van to the infirmary were Tuttle, Farina, and Trombly.

37. While plaintiff was inside the van en route to the infirmary, and while he was still in handcuffs, Tuttle punched plaintiff multiple times, while Farina and Trombly looked on and failed to intervene in any manner to present or stop the beating.

38. When the van arrived at the infirmary, Twombly finally intervened, telling Tuttle, "That's enough," whereupon the beating immediately stopped.

39. As a result of the aforementioned actions herein, plaintiff sustained severe personal injuries, including but not limited to fractures of the face which required surgical repair, and which have left plaintiff with a permanent facial deformity.

40. On September 25, 2020, plaintiff was enrolled in and had nearly completed a Comprehensive Alcohol and Substance Abuse Treatment program (CASAT) at Marcy.

41. CASAT was a program by which incarcerated individuals received intensive substance abuse treatment, with the goal of early release and reintegration from prison into the outside community.

42. Due to his then successful participation in the CASAT program, and his overall good behavior while incarcerated, plaintiff was likely to be released from prison before the end of 2020.

43. Plaintiff was particularly motivated to successfully complete the CASAT program and to obtain early release due to the medical condition of his then two-year old

daughter, who was diagnosed with and being treated for retinoblastoma, a malignant cancer of the eyes.

44.  Bause knew about the medical condition of plaintiff's daughter, plaintiff's prospective early release date from prison, and plaintiff's desire (which he had expressed on multiple occasions), to successfully complete his CASAT program and be released from custody before the end of the year.

45.  Notwithstanding Bause's knowledge of plaintiff's situation, after the September 25, 2020 use-of-force incident Bause authored a Misbehavior Report in which he knowingly and falsely accused plaintiff of having attacked Bause in the bathroom shower area without provocation.

46.  In the Misbehavior Report, Bause falsely charged plaintiff with "Assault on Staff," "Violent Conduct," and "Refusing Direct Order," and Bause falsely wrote in the Misbehavior Report, among other things, that while in the shower plaintiff, without any provocation, "started running towards me aggressively and with a closed left fist and struck me in the right side of my face and chest area."

47. As a result of the false Misbehavior Report, plaintiff was required to appear at a Tier Hearing to adjudicate the charges filed against him by Bause.

48.  At the hearing, Bause repeated his fabricated allegations by testifying that inside the bathroom shower area, plaintiff physically attacked Bause without provocation.

49.  Bause knew that by virtue of the false accusations he made against plaintiff, plaintiff likely would be found guilty of some or all of the charges made in the Misbehavior Report, discharged from the CASAT program, and deprived of his opportunity for early release from prison.

50. Based on his false Misbehavior Report and false testimony at the Tier Hearing, plaintiff was found guilty of all administrative charges and was subjected to various forms of punishment, including but not limited to confinement to the prison's Special Housing Unit (SHU) for sixty days.

51. As an additional consequence of the false charges made by Bause against plaintiff, plaintiff was discharged from and lost his opportunity to complete his CASAT program, was transferred from medium security Marcy Correctional Facility to maximum security Great Meadow Correctional Facility (Great Meadow) after serving his SHU time, and was denied early release from prison.

52. As an additional consequence of the false charges made by Bause against plaintiff, plaintiff remained incarcerated at Great Meadow until June 25, 2021, when he finally was released from DOCCS custody.

53. The aforesaid actions by defendants were intentional, sadistic, and malicious in nature, and were undertaken without any legitimate penological purpose.

54. The aforesaid actions by Bause resulted in consequences to plaintiff substantially more grave than the typical hardships experience by incarcerated individuals in the general population at Marcy.

55. The aforesaid actions by Bause were so egregious and outrageous as to shock the contemporary conscience.

56. Each of the defendants observed and had knowledge of the illegal and unconstitutional conduct of his fellow officers, had opportunities to intervene to prevent and/or stop that conduct, and deliberately and intentionally chose not to do so.

57. As a result of the aforesaid actions and inactions by defendants, plaintiff sustained severe physical and emotional injuries, was deprived of his liberty, endured and will continue to endure pain and suffering and loss of enjoyment of life, and was otherwise damaged.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (42 USC § 1983: Eighth Amendment)

58. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

59. That the aforementioned acts by defendants were in violation of the rights guaranteed to plaintiff under the Eighth Amendment to the US Constitution to be free from cruel and unusual punishment.

60. That as a result thereof, plaintiff is entitled to recover damages from defendants pursuant to 42 USC § 1983.

## SECOND CAUSE OF ACTION AGAINST BAUSE
### (42 USC § 1983: Fourteenth Amendment)

61. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

62. That the aforementioned acts by Bause were in violation of the right of substantive due process guaranteed to plaintiff under the Fourteenth Amendment to the US Constitution.

63. That as a result thereof, plaintiff is entitled to recover damages from Bause pursuant to 42 USC § 1983.

WHEREFORE, plaintiff seeks judgment against defendant Bause for compensatory damages in the amount of Two Million ($2,000,000.00), and against the

remaining defendants for compensatory damages each in the amount of One Million ($1,000,000.00) Dollars, and plaintiff also seeks punitive damages against all defendants in an amount to be determined by the trier of fact, and plaintiff also seeks attorney's fees against all defendants pursuant to 42 USC § 1988, together with interest, costs, and disbursements of this action.

Dated:  New York, New York
        February 28, 2022

                                      Yours, etc.
                                      Sivin, Miller & Roche, LLP

                                      s/ Edward Sivin
                                      Bar Roll Number: 514765
                                      Attorneys for Plaintiff
                                      Sivin, Miller & Roche, LLP
                                      20 Vesey Street, Suite 1400
                                      New York, NY 10007
                                      Telephone: (212) 349-0300
                                      E-mail: esivin@sivinandmiller.com