UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

WILLIAM ALVAREZ,

                                    Plaintiff,

-against-                                                              9:22-CV-186 (LEK/DJS)

C.O. CALEB BAUSE, *et al.*,

                                    Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff William Alvarez brings this action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officers Caleb Bause, Skyler Tuttle, Anthony Farina, and Michael Babicz, and Sergeant Glenn Trombly, alleging violations of his constitutional rights at Marcy Correctional Facility ("Marcy C.F."). Dkt. No. 12 ("Amended Complaint"). Defendants now move for partial summary judgment, Dkt. No. 49-1 ("Motion"), and provide a statement of material facts, Dkt. No. 49-3 ("Defendants' Statement of Material Facts" or "DSMF"). Plaintiff filed a response, Dkt. No. 52 ("Response"), a response to Defendants' Statement of Material Facts, Dkt. No. 52-3 at 1–5 ("Response to Defendants' Statement of Material Facts" or "RDSMF"), and a statement of additional facts, *id.* at 6–9 ("Plaintiff's Statement of Additional Facts" or "PSAF"). Defendants filed a reply, Dkt. No. 55, and a response to Plaintiff's Statement of Additional Facts, Dkt. No. 55-1 ("Response to Plaintiff's Statement of Additional Facts" or "RPSAF").

For the reasons that follow, Defendants' Motion is granted.

## II.   BACKGROUND

The factual summary of this action is taken from the parties' statements of material facts and the attached exhibits. Disputes of material fact in the record are noted.

As relevant to this action, Plaintiff was incarcerated at Marcy C.F. DSMF ¶ 2. While incarcerated, Plaintiff was enrolled in the New York State Department of Corrections and Community Supervisions' Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") program. *Id.* ¶ 8. The CASAT program is a "substance abuse treatment developed to ensure that substance use disordered individuals receive the maximum benefit from the substance abuse treatment experience during their preparation for transition back to the community." *Id.* ¶ 9 (quoting 7 NYCRR § 1950.2). It provides its participants with the opportunity for early release from prison, but only if they abide by the program's strict rules and regulations. PSAF ¶ 1. Plaintiff's successful completion of the CASAT program would have provided him with a "merit date," or early release date, of October 7, 2020. PSAF ¶ 2. Plaintiff's "maximum expiration date," or the latest date that Plaintiff could be released, was June 25, 2021. RDSMF ¶ 11.

Plaintiff was motivated to complete the CASAT program because his daughter suffered from retinoblastoma, a congenital cancer of the eyes. PSAF ¶ 5. Plaintiff alleges that he and Defendant Corrections Officer Bause discussed his daughter's medical condition on several occasions, and Bause knew of Plaintiff's desire to be reunited with his daughter. PSAF ¶ 9; *but see* RPSAF ¶ 9 (disputing).

For the majority of Plaintiff's participation in the CASAT program, Plaintiff was in compliance with its requirements and presumptively scheduled for release from prison on October 7, 2020. PSAF ¶ 3–4. However, on September 25, 2020, Bause wrote a misbehavior report, falsely accusing Plaintiff of assaulting him. PSAF ¶ 10; *but see* RPSAF ¶ 10 (disputing).

Plaintiff alleges that Bause knew if Plaintiff were found guilty of assaulting him, Plaintiff would be discharged from the CASAT program and his release from prison would be delayed. PSAF ¶ 11; *but see* RPSAF ¶ 11 (denying that Bause "had to know" the consequences if Plaintiff were to be found guilty).

After the report was issued, Plaintiff was placed in Marcy C.F.'s special housing unit ("SHU"). PSAF ¶ 12. While in the SHU, Plaintiff was unable to speak with his wife and daughter on the phone. *Id.* A disciplinary hearing was then held, and Bause testified. *Id.* ¶ 13. On October 6, 2020, eleven days after Plaintiff was initially sent to the SHU, Plaintiff was found guilty of assaulting Bause. *Id.* ¶ 14. He was sentenced to forty-nine additional days in the SHU, and he was discharged from the CASAT program. *Id.* Plaintiff was not released from prison until June 25, 2021. DSMF ¶ 16.

As relevant to this Motion, Plaintiff brings a First Amendment intimate association claim and a Fourteenth Amendment substantive due process claim against Bause. Am. Compl. ¶¶ 65–70.

### III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, summary judgment cannot be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see*

3

*also Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for its motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "conclusory allegations, speculation, or conjecture," *Fischer v. Forrest*, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" to support its claims, *Anderson*, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 133, 150 (2000). The Court "may not make credibility determinations or weigh the evidence." *Id.* Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV.   DISCUSSION**

Defendants move for summary judgment on three bases. First, Defendants argue that Bause is entitled to qualified immunity. Mot. at 4–7. Second, Defendants aver that Plaintiff's claims are barred by the *Heck* doctrine. *Id.* at 7–9. Third, Defendants argue that Plaintiff's claims

4

fail on the merits. *Id.* at 9–14. Because the Court agrees that Plaintiff's claims are barred by the *Heck* doctrine, Defendants' Motion is granted.

In *Heck v. Humphrey*, the Supreme Court considered whether a prisoner seeking money damages for an allegedly unconstitutional conviction could pursue a damages claim under Section 1983. 512 U.S. 477 (1994). The Court held that the prisoner could not, noting that "the basis for the damages claim necessarily demonstrates the invalidity of the conviction," and that a habeas corpus petition, not a Section 1983 action, is "the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement." *Id.* at 481–82. The Court adopted what is known as the "favorable termination rule," holding that "in order to recover damages for allegedly unconstitutional conviction or imprisonment . . . a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87.

Though *Heck* itself limited the favorable termination rule to when a prisoner's successful Section 1983 claim would demonstrate the invalidity of their conviction, the Supreme Court later clarified that the favorable termination rule applies to any challenge that would "necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). This includes any challenges made under Section 1983 to procedures used in disciplinary proceedings that deprived a prisoner of credits that would allow for early release. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *see also Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006) ("The case law is clear that when a prisoner's challenge either to the process or the result of a prison disciplinary proceeding necessarily implies the invalidity of a sanction that affects the duration of his sentence, such as the deprivation of good-time credits, the prisoner may not

5

maintain an action under [Section] 1983 unless he has shown that the sanction . . . [has] been overturned through administrative channels or by a state or federal court.")

Here, Plaintiff's intimate association and substantive due process claims necessarily implicate the validity of the duration of his prison sentence. Plaintiff argues that Bause's conduct prolonged the duration of his incarceration from his expected early release date of October 7, 2020 to the maximum expiration date of June 25, 2021. If Plaintiff were to prevail with these claims, such a determination would "necessarily impl[y] the invalidity of a sanction that affect[ed] the duration of his sentence." *Peralta*, 467 F.3d at 100; *see also White v. Bergenstock*, No. 08-CV-717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009) (dismissing a prisoner's Section 1983 claim "for a false misbehavior report" because it would "necessarily imply the invalidity of the disciplinary conviction"). In the absence of any showing that the outcome of Plaintiff's disciplinary proceeding has been overturned through administrative channels or by a state or federal court, Plaintiff's claims must be dismissed.

Plaintiff presents several arguments for why *Heck*'s favorable termination rule does not preclude liability in this action. For one, Plaintiff cites to *McPherson v. Rogers* to argue that "it is not at all clear that *Heck* has any applicability to the violations Plaintiff suffered." No. 12-CV-766, 2014 WL 675830 (N.D.N.Y. Feb. 21, 2014); *see* Resp. at 12. The Court disagrees. In *McPherson*, a plaintiff brought a Section 1983 claim against a corrections officer, alleging that he falsified a misbehavior report in retaliation for the plaintiff engaging in protected speech. 2014 WL 675830, at *3. Arising out of the misbehavior report, Plaintiff was subjected to a lengthy sentence in the SHU. *Id.* The defendant ultimately moved for summary judgment as to Plaintiff's claims, arguing that *Heck* and its progeny barred liability. *Id.* at *14. The court held that *Heck* did not apply, because the allegations most closely resembled a First Amendment

6

retaliation claim which would not impugn the validity of the disciplinary sentence. *Id.* at *14. The court explained that the validity of the SHU sentence was immaterial to the plaintiff's claim that defendant issued the misbehavior report with retaliatory animus. *Id.* at *15.

Here, the court's logic in *McPherson* does not apply. Unlike in *McPherson*, Plaintiff's claims in this action would necessarily impugn the validity of his disciplinary sentence; a jury could not find that Plaintiff's rights to intimate association and substantive due process were violated without finding that the disciplinary sentence was also invalid. Accordingly, the Court finds that the *Heck* bar is applicable to Plaintiff's claims in this case.

Plaintiff also argues that even if *Heck*'s favorable termination rule bars his claims, the rule applies only to "the *length* of his [confinement], and not to the *conditions* of those confinements." Resp. at 13. He avers that his claims also challenge the conditions of his confinement; particularly that the nature of his confinement following the October 6, 2020 disciplinary proceeding gives rise to liability. *Id.* at 13–14. However, this argument does not save Plaintiff's claims. Even if the Court were to find that Plaintiff's rights were violated due to the conditions of his confinement—and the Court is skeptical that it would— the fact remains that Bause was not personally involved in imposing those conditions. As it relates to the October 6, 2020 disciplinary proceeding, Plaintiff only alleges that Bause provided testimony; he was not involved in finding Plaintiff guilty of the charges or determining the appropriate punishment. *See* PSAF ¶ 13. Accordingly, because "a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered," Bause cannot be found liable due to lack of personal involvement. *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 233 (N.D.N.Y. 2019) (internal quotations omitted); *see also Gomez v. Graham*, No. 14-CV-201, 2016 WL 8652781, at *10 n.13 (N.D.N.Y. June 16, 2016) (finding no personal involvement in a conditions of

confinement claim when the plaintiff alleges that the defendant only "falsely issued the misbehavior report that resulted in the disciplinary confinement" and took no part in imposing the disciplinary sentence).

Plaintiff also argues that *Heck* is no bar to his claims with respect to the eleven days he spent in the SHU after Bause filed the misbehavior report, but before Plaintiff was found guilty of the charges filed against him. Resp. at 11. He avers that "Plaintiff's claim that he was no longer allowed to have any phone calls with his wife or daughter during those first 11 days . . . does not call into question the validity of his conviction or sentence on those charges." *Id.* at 11–12 (internal quotations omitted). Plaintiff is correct that a challenge to his time in the SHU prior to his disciplinary hearing would not necessarily be barred by *Heck*. However, his claims nevertheless fail. The Court finds that Plaintiff's intimate association and substantive due process rights were not violated during the initial eleven days he spent in the SHU. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (stating that while the right to intimate association is not "altogether terminated by incarceration," "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context"); *see also Brogdon v. City of New York*, No. 16-CV-8076, 2018 WL 4762981, at *12 (S.D.N.Y. Aug. 8, 2018) (finding that the prisoner's confinement to the SHU, where he was denied contact with anyone other than his attorney, did not violate the prisoner's right to intimate association).

Accordingly, the Court finds that Plaintiff's intimate association and substantive due process claims cannot survive. In so ruling, the Court need not consider Defendants' additional arguments. Defendants' Motion is granted.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for partial summary judgment, Dkt. No. 49, is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's First Amendment right to intimate association and Fourteenth Amendment substantive due process claims are **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   May 12, 2025
         Albany, New York

LAWRENCE E. KAHN
United States District Judge