**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM ALVAREZ,

Plaintiff,

-v- 9:22-CV-186 (AJB/DJS)

C.O. CALEB BAUSE, C.O. SKYLER TUTTLE, C.O. ANTHONY FARINA, C.O. MICHAEL BABICZ, and SGT. GLENN TROMBLY,

Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

# ORDER on MOTIONS *IN LIMINE*

## I. INTRODUCTION

William Alvarez ("plaintiff") filed this Section 1983 action asserting claims against corrections officers Caleb Bause ("Bause"), Skyler Tuttle ("Tuttle"), Anthony Farina ("Farina"), Michael Babicz ("Babicz"), and Glenn Trombly ("Trombly") (collectively, "defendants") for violations of his Eighth Amendment rights. Dkt. No. 1. Broadly, plaintiff alleged that, while incarcerated at Marcy Correctional Facility ("Marcy") in 2020, defendants subjected him to excessive force and failed to intervene in each other's excessive uses of force. *Id.*

This case is set for a jury trial beginning on Monday, November 9, 2026, at 9:00 a.m. in Utica, New York. Presently before the Court are the parties' pre-trial motions *in limine*, Dkt. Nos. 141, 145, 151, 167, which have been fully briefed. Dkt. Nos. 161–62, 166. The Court heard argument from the parties at the final pretrial conference on November 3, 2026.

## II. LEGAL STANDARD

A motion *in limine*'s purpose is to streamline the trial with rulings about the forecasted evidence's admissibility or anticipated arguments' permissibility. *See, e.g.*, *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (reducing interruptions); *United States v. Wagner*, 651 F. Supp. 3d 594, 598 n.1 (N.D.N.Y. 2023) (applying to arguments).

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) (citation omitted). "The movant has the burden of establishing that the evidence is not admissible for any purpose." *Id.* "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Id.* Finally, "[t]he court's ruling regarding a motion *in limine* is subject to change when the case unfolds." *Id.*

## III. DISCUSSION

Both parties seek rulings on the admissibility of certain evidence and testimony at trial. Dkt. Nos. 141, 145, 151. Additionally, defendants Bause, Babicz, and Tuttle have moved for severance of plaintiff's claims against them if the Court allows plaintiff to present evidence relating to a 2024 use-of-force incident involving defendants Farina and Trombly. Dkt. No. 138.

### A. Proposed Pattern Evidence

Plaintiff seeks to admit evidence relating to the 2024 death of Robert Brooks to demonstrate the existence of a pattern and practice of New York State Department of Corrections and Community Supervision ("DOCCS") officers covering up excessive uses of force by underreporting the extent of force used and utilizing certain methods of force, like pepper spray or "OC" spray, to create the impression that uses of force were justified. Dkt. No. 151 ("Pl.'s Mem.") at 14–18. In response, defendants argue that plaintiff should be precluded from offering any

evidence relating to the Brooks assault or, alternatively, that the Court should "decline to issue broad prospective rulings authorizing the introduction of evidence . . . in the absence of a specific evidentiary context, and instead reserve such determinations for trial as appropriate." Dkt. No. 162 ("Defs.' Opp.").

**1. The Brooks assault**

On December 9, 2024, Robert Brooks ("Mr. Brooks") was transferred to Marcy from a nearby correctional facility. Pl.'s Mem. at 8. Upon his arrival, Mr. Brooks was sprayed with OC spray outside the Marcy infirmary building. *Id.* The officers involved in deploying the OC spray called for other officers to respond. *Id.* Trombly and Farina responded to the area, where they found "Mr. Brooks . . . lying handcuffed on the ground." *Id.* Then, "Mr. Brooks was walked/carried from the walkway by officers into the Marcy [i]nfirmary [b]uilding." *Id.*

While in the infirmary, several corrections officers, including Farina and proposed non-party witness Christopher Walrath ("Walrath"), "punched, kicked, choked, and otherwise beat Mr. Brooks, who was restrained in handcuffs and not resisting in any manner." Pl.'s Mem. at 8–9. "Mr. Brooks' injuries were sufficiently severe that he had to be sent to an outside hospital, where he was pronounced dead." *Id.* at 9. Trombly was intermittently present throughout the assault of Mr. Brooks, and he subsequently oversaw the preparation of use-of-force paperwork in connection with the incident. Pl.'s Mem. at 9. Many corrections officers were present for and involved in the assault of Mr. Brooks, but Trombly only instructed three of the officers to prepare use-of-force reports. *Id.* The officers' reports did not include the names of certain officers involved in the use of force, including Farina and Walrath, Dkt. No. 151-6 at 20–26, and excluded any reference to the assault at the infirmary. *Id.*

Without the officers' knowledge, some of their body-worn cameras had activated during the assault in the infirmary. Pl.'s Mem. at 9. "After the death of Mr. Brooks, th[at] body worn

camera footage came to light and several officers, including Farina and Trombly, faced criminal charges in connection with Robert Brook[s'] death." *Id.*

During the investigation of Mr. Brooks death, Trombly participated in three interviews primarily relating to the events of December 9, 2024, but also relating to the practices of corrections officers at Marcy more generally. Dkt. Nos. 151-4, 151-7, 151-8. Though the interviews were largely focused on the officers involved in the assault of Mr. Brooks and the events of December 9, 2024, Trombly was also asked about the culture of retaliation among corrections officers and practices that corrections officers engage in to minimize the appearance of the extent of force used or to make an otherwise excessive use of force appear justified. Dkt. No. 151-8 at 1:43:25–1:46:28, 1:47:08–1:48:23.

**2. Plaintiff's Allegations**

Plaintiff alleges that "[o]n September 25, 2020, inside the F-1 dorm of Marcy . . . plaintiff and . . . Bause engaged in a verbal exchange." Dkt. No. 150 ("Pl.'s Tr. Br.") at 2. "Sometime later, Bause ordered plaintiff to clean the floors of the bathroom and shower area of the dorm[,] [and] [p]laintiff obeyed Bause's order." *Id.* Then, "[w]hile plaintiff was cleaning the bathroom shower area, Bause entered, and when plaintiff turned around in response to Bause calling his name, Bause discharged chemical spray in plaintiff's face." *Id.*

"After being sprayed with the chemical spray, plaintiff ran out of the shower area into the main dorm area." Pl.'s Tr. Br. at 1. "While in the shower area[,] . . . Bause called for a response, *i.e.*[,] for additional officers to come to the dorm to assist him." *Id.* Then, "Bause followed plaintiff into the main dorm area and ordered plaintiff to step into a vestibule located at the entrance of the dorm." *Id.* at 1–2. "Plaintiff complied with Bause's order," as "Trombly, Tuttle, Babicz, Farina and others whom plaintiff could not identify by name responded to the dorm." *Id.* at 2.

"Upon responding, Tuttle slammed plaintiff's head against the vestibule wall multiple times, and placed plaintiff in handcuffs." Pl.'s Tr. Br. at 2. "After being handcuffed, plaintiff fell to the ground and was kicked multiple times in the head and body." *Id.* Plaintiff was then dragged into a van and transported to the prison infirmary." *Id.* "Accompanying plaintiff in the van to the infirmary were Tuttle, Farina, and Trombly." *Id.* "While plaintiff was inside the van enroute to the infirmary, and while he was still in handcuffs, Tuttle and Farina, *inter alia*, choked and punched plaintiff, while Trombly continued to look on, and failed to intervene." *Id.* "Once the van arrived at the infirmary, Trombly intervened, telling Tuttle and Farina, 'That's enough,' whereupon the beating immediately stopped." *Id.*

According to plaintiff, "[a]fter the incident, and consistent with DOCCS practices, a false narrative was provided under the supervision of . . . Trombly, regarding where the force occurred, how much force was used, and who was involved." Pl.'s Tr. Br. at 2.

**3. Admissibility**

Plaintiff argues that the proposed evidence should be admitted against all defendants under Federal Rule of Evidence ("Rule") 404(b). Pl.'s Mem. at 14–18. In opposition to plaintiff's motion and in support of their cross-motion to preclude the proposed pattern evidence, defendants argue that the proposed evidence is irrelevant, there is no permissible non-propensity purpose for the evidence, and regardless, that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Dkt. No. 145 ("Defs.' Mem") at 9–11; Dkt. No. 141 ("Trombly Mem.") at 9–15. In response, plaintiff argues that the evidence is highly relevant to his claims, that the evidence is offered for the permissible non-propensity purpose of proving a pattern of conduct, and that "the risk of prejudice is not so great as to outweigh the very high probative value." Dkt. No. 161 ("Pl.'s Opp.") at 9–11.

"In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court outlined the test for admission of other acts evidence under Rule 404(b)." *United States v. Gilan*, 967 F.2d 776, 780 (2d Cir. 1992). "First, the evidence must be introduced for a proper purpose, such as proof of knowledge or identity." *Gilan*, 967 F.2d at 780 (quoting *Huddleston*, 485 U.S. at 691). "Second, the offered evidence must be relevant to an issue in the case pursuant to Rule 402, as enforced through Rule 104(b)." *Gilan*, 967 F.2d at 780 (citing *Huddleston*, 485 U.S. at 691–92). "Third, the evidence must satisfy the probative-prejudice balancing test of Rule 403." *Gilan*, 967 F.2d at 780 (citing *Huddleston*, 485 U.S. at 691–92).

**i. Permissible Purpose**

At the first step, the Court must determine whether plaintiff has offered the evidence for a permissible purpose. "Rule 404(b) prohibits the use of other wrongful acts against a defendant merely to show that the defendant had the propensity to commit the act in question." *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990). But under the Second Circuit's inclusionary approach to Rule 404(b), evidence of other acts, including subsequent acts, "will be admissible for any other relevant purpose." *Id.* For example, wrongful acts or "other acts" evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Plaintiff primarily argues that the proposed evidence may be admitted for the non-propensity purpose of demonstrating a pattern of conduct by defendants—namely, a pattern of covering up excessive uses of force by underreporting the extent of force used and utilizing certain methods of force to create the impression that otherwise unjustified uses of force were justified. Pl.'s Mem. at 14–18.

"To merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978)). Put differently, "[t]he existence of a pattern, or a 'recurring *modus operandi*,' can be proven by evidence of 'characteristics . . . sufficiently idiosyncratic to permit a fair inference of a pattern's existence.'" *Carroll v. Trump*, 124 F.4th 140, 168 (2d Cir. 2024) (quoting *United States v. Sliker,* 751 F.2d 477, 487 (2d Cir. 1984), *cert. denied*, 146 S. Ct. 2789 (2026), *reh'g denied*, No. 25-573, 2026 WL 2374093 (U.S. Aug. 17, 2026).

"The similarities between the [other] acts and current allegations 'need not be complete.'" *Carroll*, 124 F.4th at 168 (quoting *Sliker*, 751 F.2d at 487). Rather, "[i]t is enough for admissibility purposes that the acts be sufficiently similar as to 'earmark them as the handiwork of the accused.'" *Carroll*, 124 F.4th at 168 (quoting *Sliker*, 751 F.2d at 487); *see Ismail v. Cohen,* 899 F.2d 183, 185, 188–89 (2d Cir. 1990) (upholding admission of police officer's attack on another civilian and subsequent coverup, two months after same officer's alleged attack on plaintiff, to show pattern and intent).

Plaintiff has identified multiple, specific shared characteristics between his assault and the Brooks assault including the types of force used, the fact that force was documented as occurring in only one location despite evidence that there were subsequent uses of force in other locations, and facial injuries at least partially justified by a fall. *See* Pl.'s Mem. at 16 (comparing aspects of plaintiff's assault with the assault of Mr. Brooks). Accordingly, plaintiff has satisfied the first part of the Rule 404(b) test.

**ii. Relevance**

Next, plaintiff must show that the proposed pattern evidence is relevant. "The relevancy of similar act evidence is insured by the requirements of Rule 104(b); and accordingly, similar act evidence is relevant if the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant committed the act." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990).

As an initial matter, plaintiff has set forth sufficient evidence from which a jury could reasonably find that the events underlying the Brooks assault and subsequent coverup occurred, that Trombly participated in the coverup, and that Farina participated in the assault. Pl.'s Mem. at 7–10. Indeed, both defendants have been convicted of crimes arising out of their involvement in the Brooks case. Defs.' Mem. at 8 (seeking to preclude evidence relating to Trombly's and Farina's convictions arising out of the Brooks case).

The same cannot be said of the other three defendants. Absent allegations of a conspiracy, "'similar act evidence is relevant only if the jury can reasonably conclude . . . *that the defendant was the actor*.'" *United States v. Brady*, 26 F.3d 282, 286 (2d Cir. 1994) (quoting *Huddleston*, 485 U.S. at 689) (emphasis in *Brady*).

Plaintiff has not identified any evidence from which a jury could reasonably conclude that Bause, Babicz, or Tuttle had any involvement in the Brooks assault. To be sure, throughout the course of the Brooks investigation Trombly made statements to law enforcement about the existence of certain practices among corrections officers at Marcy. *See* Dkt. Nos. 151-8 at 1:43:25–1:46:28 (describing how corrections officers yell "stop resisting" when an incarcerated individual is no longer resisting to avoid the appearance that the officers are assaulting the individuals), 1:47:08–1:48:23 (describing how corrections officers may use OC spray to make any

subsequent use of force appear justified); 151-4 at 1:49:23–1:49:27 ("Usually they always say . . . 'if the guy lands face first, it'll justify a facial injury.'"). But Trombly's statements were made over four years after the alleged incident in this case, and plaintiff has not offered any other evidence connecting Bause, Babicz, or Tuttle to the practices described.

Though a court need not preliminarily find that a proponent of other acts evidence has *proved* that a defendant committed the act by a preponderance of the evidence, that "is not to say, however, that the [proponent] may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston*, 485 U.S. at 689; *see also United States v. Angelilli*, 660 F.2d 23, 41 (2d Cir. 1981) (rejecting the notion "that a defendant's mere membership in an organization practicing a particular type of crime could be used to show that the defendant himself committed such a crime").

At this stage, plaintiff has not established the relevance of the proposed 404(b) evidence as to Bause, Babicz, and Tuttle. Accordingly, plaintiff's motion to admit the proposed evidence against those defendants is denied, without prejudice to renewal at trial if a proper evidentiary foundation is laid connecting those defendants to the other acts at issue. In the event that the Court admits other acts evidence against Farina and/or Trombly, the remaining defendants may propose a limiting instruction to be given at the time the evidence is admitted.

**iii. Rule 403 Balancing**

Finally, the Court must determine whether the probative value of the proposed 404(b) evidence (as to Farina and Trombly) is substantially outweighed by the danger of unfair prejudice.

Plaintiff seeks to admit, among other things[1]: (1) recordings of Trombly's interviews with law enforcement officers in January 2025 as part of the investigation of Robert Brooks' death, Dkt. Nos. 151-4, 151-7, 151-8; (2) DOCCS records relating to the death of Robert Brooks, Dkt. No. 151-6; (3) an image of Trombly during the assault of Robert Brooks, Dkt. No. 151-5; and (4) publicly available body-worn camera footage of the assault.

At the outset, the probative value of the photo and videos of the Brooks assault is substantially outweighed by the danger of unfair prejudice. First, as explained *supra*, defendants Tuttle, Bause, and Babicz were not involved in the Brooks assault. Second, the highly graphic nature of the footage is likely to elicit an emotional response from jurors, creating a risk that the jury may improperly base its decision on emotion rather than evidence. Third, a limiting instruction would be unlikely to effectively mitigate the prejudice created by the inflammatory photo and video evidence. Finally, as to Farina, admission of the footage would only serve to create an impermissible propensity inference—*i.e.*, that Farina must have committed the alleged assault of plaintiff because he is a violent person with the propensity to assault non-resisting incarcerated individuals.[2]

For similar reasons, the Court will preclude plaintiff from eliciting testimony pertaining to the Brooks assault or making reference to "Robert Brooks," "Mr. Brooks," the "Brooks" assault,

---

[1] Plaintiff's proposed exhibit list contains additional materials from the Brooks case, *see* Dkt. No. 152 at 3–4, but plaintiff has not submitted those in connection with his motion. Nor has he specified which portions of those materials he intends to offer. The Court declines to rule on the admissibility of evidence not before it.

[2] Farina has denied involvement in the alleged assault. Dkt. No. 137 ("Defs.' Tr. Br.") at 6–7. Accordingly, plaintiff may argue that evidence of the Brooks' assault is admissible to show Farina's *modus operandi* and, thus, connect him with the assault of plaintiff. "To merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" *Berkovich*, 922 F.2d at 1022 (quoting *United States v. Benedetto,* 571 F.2d 1246, 1249 (2d Cir. 1978)). Farina's alleged assault of plaintiff shares some characteristics with his assault of Brooks. For example, Farina is accused of punching a non-resisting incarcerated individual in both cases. But allegations that a corrections officer punched a non-resisting incarcerated individual are made routinely and do not amount to a "unique scheme." And in any event, for the reasons explained *infra*, the prejudicial nature of the photo and video evidence substantially outweighs its probative value.

or the "Brooks" case. The death of Robert Brooks at the hands of corrections officers was widely publicized, along with the names of defendants Trombly and Farina. The risk that a jury may conclude that all defendants are liable for excessive force based on the subsequent acts of two defendants is high. Moreover, the probative value of Mr. Brooks' identity is low. Any proposed pattern evidence offered at trial must be redacted to account for this limitation.

The probative value of the DOCCS records relating to the Brooks assault is fairly low. The events described in the reports concern almost entirely non-party corrections officers. Dkt. No. 151-6 at 3–4, 8. Evidence describing a non-party officer's use of force from an unrelated incident in 2024 is minimally probative of plaintiff's claim that defendants used excessive force against him in 2020 and would likely create confusion for a jury. Additionally, it is unclear what, if any, probative value records documenting the medical treatment Mr. Brooks received have to plaintiff's claims. Dkt. No. 151-6 at 29–33, 43–44. To the extent that there is probative value in the similarity of the portions of the report documenting the type of force that corrections officers claimed to have used, that value is diminished by the fact that Bause submitted the use of force report regarding plaintiff's alleged assault, and as noted *supra*, there is no evidence connecting Bause to the Brooks assault. In all, at this stage, the Court declines plaintiff's invitation to grant wholesale admission of DOCCS records pertaining to the Brooks assault.

Lastly, the Court declines to make a blanket ruling as to the admissibility of the nearly 12 hours of recorded interviews of Trombly without the benefit of context at trial. Instead, the Court will reserve ruling on any portions of the interview that plaintiff intends to offer until trial.

Though the Court declines to proactively admit the interviews of Trombly into evidence, the Court emphasizes that, based on the available record,[3] the probative aspects of those interviews are Trombly's statements regarding his own reporting practices, including the impact of the retaliatory culture on his willingness to report excessive uses of force.[4] *See, e.g.*, Dkt. No. 151-4 at 4:13:01–4:13:22 (explaining that where Trombly does not witness a use of force he "takes the officer's word" as to what occurred), 4:13:22–4:15:00 (explaining that even where a supervisor witnesses another officer using excessive force, the supervisor would be dissuaded from reporting out of fear of retaliation).

In sum, (1) the Court will PRECLUDE photo and video evidence of the Brooks assault; (2) the Court will PRECLUDE plaintiff from making reference to Mr. Brooks, the Brooks case, or any non-party corrections officers involved in the Brooks case; and (3) the Court RESERVES ruling on the admissibility of the recorded interviews of Trombly until it has the benefit of the context in which such evidence would actually be offered or the specific objections that may arise.

To assist the Court in making its rulings on the admissibility of the recorded interviews of Trombly, plaintiff shall, to the extent practicable, file a notice designating each portion of the recorded interviews he intends to offer at trial **at or before 1:00 p.m. on November 6, 2026**. Plaintiff's designations should include the interview date and the start and end timestamp of the portion being offered, together with a short summary of the contents of the specific portion of each interview and statement of the purpose for which, and the context in which, each portion will be

[3] If plaintiff is able to connect Bause, Babicz, and Tuttle to some of the other practices Trombly described—*e.g.*, attributing facial injuries to falls rather than force and yelling "stop resisting" at an incarcerated individual who is no longer resisting—then additional portions of Trombly's interviews may become probative.

[4] Trombly's statements that do not concern "other acts" may be independently admissible as party admissions under Rule 801(d)(2).

offered. Defendants are directed to submit any objections to plaintiff's designations **at or before 8:00 a.m. on November 9, 2026.**

### B. Severance of Plaintiff's Claims Against Bause, Babicz, and Tuttle

Bause, Babicz, and Tuttle argue that, if the Court grants plaintiff's motion seeking admission of evidence relating to the Brooks' assault, then the Court should sever plaintiff's claims against them to avoid undue prejudice. Dkt. No. 138 at 2–5.

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, a court can order separate trials where doing so will further convenience, avoid prejudice, or promote efficiency. Fed. R. Civ. P. 42 (b). "[B]ifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (internal citation omitted). Importantly, "'[b]ifurcation is the exception, not the rule,' and the burden of demonstrating whether bifurcation is warranted 'falls squarely on the party seeking bifurcation.'" *Sohnen v. Charter Commc'ns, Inc.*, 761 F. Supp. 3d 556, 574 (E.D.N.Y. 2025) (first quoting *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 67 (E.D.N.Y. 2007) (collecting cases); then quoting *Doe 1 v. U.S. Twirling Ass'n, Inc.*, 2024 WL 1858230, at *2 (E.D.N.Y. Apr. 28, 2024)).

The Court agrees with defendants that the wholesale admission of evidence relating to the Brooks case would be highly prejudicial to Bause, Babicz, and Tuttle, and could potentially warrant severance of plaintiff's claims against those defendants. But in light of the Court's ruling partially excluding Brooks-related evidence, precluding any reference to "Brooks" or the "Brooks" case, and declining to rule as to the admissibility of the remaining proposed pattern evidence, *see supra* Point III.A.3.iii, the Court finds that severance is unwarranted at this time.

### C. Criminal Convictions

Plaintiff, Trombly, and Farina have moved to preclude the admission of evidence pertaining to their criminal convictions. *See* Defs.' Mem. at 14–23; Pl.'s Mem. at 11–13.

Under Rule 609(a)(1)(A), felony convictions must be admitted to impeach a witness's character for truthfulness unless the probative value of the conviction evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 609(a)(1)(A); Fed. R. Evid. 403.

In weighing "probative value against prejudicial effect . . . courts examine: '(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.'" *Coleman v. Durkin*, 585 F. Supp. 3d 208, 213 (N.D.N.Y. 2022) (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). Though all factors are relevant, "[p]rime among them is whether the crime, by its nature, is probative of a lack of veracity." *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977).

Rule 609(a)(1)(A) presumptively requires "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed," *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005), but the district court has "wide discretion to impose limitations on the cross-examination of witnesses," *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002). For instance, courts have excluded evidence of the statutory name of an offense and the length of the sentence imposed. *See United States v. Brown*, 606 F. Supp. 2d 306 (E.D.N.Y. 2009); *see, e.g.*, *Miller-Harris v. Cnty. of Onondaga*, 808 F. Supp. 3d 386, 404 (N.D.N.Y. 2025) (excluding statutory name of conviction but admitting evidence of "(1) the fact that plaintiff was convicted of one or more felonies; (2) the dates of those convictions; and (3) the sentences imposed"); *Ridge v. Davis*, 639 F. Supp. 3d 465, 475 (S.D.N.Y. 2022) (same).

**1. Farina's Criminal Convictions**

Farina argues that plaintiff should be precluded from discussing his conviction for first-degree manslaughter,[5] or alternatively, that evidence of that conviction be limited to the name of the conviction, its date, and the sentence imposed. Defs.' Mem. at 20–23. In opposition, plaintiff argues that Farina's conviction is admissible for impeachment purposes. Pl.'s Opp. at 19–20.

Applying the relevant factors, the Court will admit the essential facts of Farina's conviction, except for the statutory name of the offense, for impeachment purposes. The first factor, *i.e.*, impeachment value, weighs against admission. "[A]ll Rule 609(a)(1) felonies are not equally probative of credibility but that many are significantly probative of a witness's propensity for truthfulness." *Estrada*, 430 F.3d at 617. For example, "acts of violence, which may result from a short temper, a combative nature, extreme provocation, or other causes, . . . generally have little or no direct bearing on honesty and veracity." *Id.* (internal quotation omitted). In that regard, "crimes requiring planning or preparation bear more strongly on veracity than violence alone suggests because planning indicates deliberate and injurious violation of basic standards rather than impulse or anger, and usually it involves some element of deceiving the victim." *Id.* at 618 (internal quotation omitted). As a crime of violence that does not require premeditation or planning, manslaughter is not particularly probative of credibility. Accordingly, the first factor weighs against admission

The second factor—the remoteness of the conviction—militates in favor of admission. Farina's manslaughter conviction is recent. He pleaded guilty to first-degree manslaughter in

[5] Defendants also seek exclusion of Farina's 2019 conviction for Driving While Ability Impaired ("DWAI"), a traffic violation under New York law. Defs.' Mem. at 23. Plaintiff has not opposed that branch of defendants' motion. *See generally* Pl.'s Opp. Because DWAI is neither a felony, nor a crime of dishonesty, it is not admissible for impeachment purposes under Rule 609(a). Accordingly, the Court will grant defendants' motion to preclude evidence and testimony relating to Farina's DWAI conviction.

2025. Defs.' Mem. at 22. Farina concedes that the conviction is not remote. *Id.* Accordingly, this factor weighs in favor of admission.

The third factor concerns the similarity between the past crime and the alleged conduct. "[T]he less similar the pending case to the prior conviction, the less prejudicial its admission is." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 214 (N.D.N.Y. 2022) (internal quotation omitted). This factor weighs against admission because the past crime involved an excessive use of force against an incarcerated individual, and plaintiff alleges the same in this case.

Finally, the fourth factor concerns the importance of the witness's credibility. Defendants argue that Farina's credibility is not particularly important because there will be other evidence and testimony to corroborate his testimony. Defs.' Mem. at 22. But plaintiff has submitted evidence that calls into question the veracity of some of the corroborating evidence (*e.g.*, the use-of-force reports) and the credibility of other testifying witnesses (*e.g.*, Trombly). This case hinges almost entirely on the parties' credibility as there appears to be no video documentation of the alleged events. Accordingly, the Court finds that the importance of Farina's credibility is substantial. Consequently, this factor weighs in favor of admission.

In all, the Court will allow evidence of (1) the fact that Farina was convicted of a felony; (2) the date of the conviction; and (3) the sentence imposed. To account for the low impeachment value and the risk of prejudice created by the similarity between the offense and plaintiff's allegations, the Court will exclude any reference to the statutory name of the conviction and any details of the conviction.

**2. Plaintiff's Criminal Convictions**

Plaintiff argues that "defendants should be precluded from offering into evidence or otherwise referencing plaintiff's criminal history, beyond the jury being informed that at the time

of the incident plaintiff was serving a sentence for a felony conviction." Pl.'s Mem. at 11–13. Defendants have not opposed this branch of plaintiff's motion. *See generally* Defs.' Opp.

At the time of the subject incident, plaintiff was incarcerated for criminal sale of a controlled substance in the fifth degree. Pl.'s Mem. at 10. Plaintiff was sentenced in connection with that conviction in 2019, and he served three years in custody. *Id.*

As a felony conviction within the last ten years, the essential facts of plaintiff's sale of a controlled substance conviction are presumptively admissible under Rule 609(a)(1)(A). However, upon consideration of the relevant factors, the Court will limit admission of plaintiff's conviction to the fact that plaintiff was serving a sentence for a felony conviction at the time of the alleged incident. First, the impeachment value of plaintiff's conviction is relatively low. *See United States v. Vasquez*, 840 F. Supp. 2d 564, 569 (E.D.N.Y. 2011) (finding impeachment value of conviction for sale of a controlled substance "higher than that for mere drug possession," but "still moderately low on the scale of veracity-related crimes"). The second factor is neutral; plaintiff's conviction is at least seven years old, making it neither recent nor remote. Third, the similarity of the crime and the conduct at issue is minimal, weighing in favor of admission. The fourth factor similarly supports admission as plaintiff's credibility is central to his claims, and the importance of his testimony is high.

In sum, the Court finds that limited admission of plaintiff's conviction is appropriate. Accordingly, defendants will be permitted to introduce evidence or elicit testimony that, at the time of the alleged incident, plaintiff was serving a sentence for a felony conviction.

On October 15, 2026, plaintiff was convicted of felony trespass in Pennsylvania. Dkt. No. 167 at 1. He was sentenced to 6 to 23 months of incarceration, which amounted to a time-served sentence, and resulted in his release, followed by a 3-year period of probation. *Id.*

The relevant factors support limited admission of plaintiff's felony trespass conviction. The first and third factors weigh slightly against admission. The first factor, *i.e.*, impeachment value, weighs slightly against admission because plaintiff's low-level felony trespass conviction does not involve misrepresentation or deceit, and is not particularly probative of his credibility. The third factor, *i.e.*, the similarity of the crime to the conduct at issue in this case, likewise weighs slightly against admission. According to defendants, plaintiff was refusing Bause's orders at the time of the alleged use of force. Dkt. No. 151-3 at 1 ("Officer Bause gave several orders for Alvarez to stay on the floor, inmate Alvarez continued to refuse his orders and attempted to get off the floor."). Plaintiff's conviction involves his failure to obey a notice against trespass posting. 18 Pa. Stat. and Cons. Stat. Ann. § 3503(b)(1)(ii) (stating that "[a] person commits [criminal trespass] if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: . . . (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders"). The similarity between plaintiff's conviction and his alleged conduct creates the risk that a jury may conclude that plaintiff has a propensity to disobey authority.

The second and fourth factors weigh in favor of admission. The second factor, remoteness, supports admission. Plaintiff's conviction is less than one month old. Dkt. No. 167 at 1. The fourth factor, the importance of plaintiff's credibility, similarly supports admission. Absent any video footage of the alleged incident, plaintiff's credibility is central to this case.

In sum, the Court finds that limited admission is appropriate. Accordingly, defendants may introduce evidence of: (1) the fact that plaintiff has been convicted of a felony; (2) the date of the conviction; and (3) the sentence imposed. The Court will preclude reference to the name of the conviction and the underlying facts.

Evidence pertaining to plaintiff's remaining convictions will be precluded. In 2014 or 2015, plaintiff was convicted for the sale of marijuana in Pennsylvania for which he was incarcerated for six to eight months. Pl.'s Mem. at 10. A conviction that is more than 10 years old will only be admissible if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). Plaintiff's conviction for the sale of marijuana is not particularly probative of his credibility, and the record lacks information from which the Court could conclude that the probative value of the specific facts and circumstances substantially outweighs its prejudicial effect. Accordingly, plaintiff's motion to preclude his sale of marijuana conviction will be granted.

Prior to that, in 2005, plaintiff was convicted for attempted burglary, for which he served three years in prison. Pl.'s Mem. at 10. To be sure, burglary is a crime of stealth that is somewhat probative of credibility. *See United States v. Estrada*, 430 F.3d 606, 618 (2d Cir. 2005) (identifying burglary as a crime of stealth). However, plaintiff's attempted burglary conviction is over twenty years old, and there is no indication in the available record that the facts underlying plaintiff's 2005 attempted burglary conviction will be particularly probative of his credibility in 2026. Accordingly, preclusion of plaintiff's 2005 attempted burglary conviction is warranted.

Finally, plaintiff has misdemeanor convictions for possession of paraphernalia and marijuana, assault, and trespass. Pl.'s Mem. at 10. Plaintiff has not offered the dates of these convictions, but as misdemeanor offenses that do not involve dishonesty or false statements, they are inadmissible for impeachment purposes under Rule 609(a). Accordingly, plaintiff's misdemeanor convictions will be precluded.

**3. Trombly's Criminal Convictions**

Trombly argues that evidence of his criminal conviction for reckless endangerment should be precluded, and that evidence of his conviction for offering a false instrument for filing should be precluded or, alternatively, limited to its permissible impeachment purpose. Trombly Mem. at 15–22; Defs.' Mem. at 14–20. In opposition, plaintiff has not addressed Trombly's reckless endangerment conviction, but argues that he should be permitted to inquire into Trombly's false instrument conviction. Pl.'s Opp. at 16–18.

As an initial matter, evidence of Trombly's reckless endangerment conviction is inadmissible for impeachment purposes. Reckless endangerment in the second degree is a class A misdemeanor. N.Y. Penal Law § 120.20. "A sentence of imprisonment for a class A misdemeanor shall . . . not exceed three hundred sixty-four days." N.Y. Penal Law § 70.15; *see also* N.Y. Penal Law § 10.00 (defining misdemeanor as "an offense . . . for which a sentence to a term of imprisonment in excess of one year cannot be imposed").

Aside from crimes involving a dishonest act or false statement, which must be admitted regardless of the potential punishment, *see* Fed. R. Evid. 609(a)(2), misdemeanors are generally inadmissible for impeachment purposes, *see* Fed. R. Evid. 609(a)(1) (governing admissibility of conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year").

Reckless endangerment does not involve a dishonest act or false statement. N.Y. Penal Law § 120.20 ("A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."). Accordingly, Trombly's conviction for reckless endangerment in the second degree is not admissible for impeachment purposes, and will be excluded.

On the other hand, Trombly's conviction for offering a false instrument for filing must be admitted for impeachment purposes. Under the Federal Rules of Evidence, evidence of a criminal conviction "*must* be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement." Fed. R. Evid. 609(a)(2) (emphasis added).

Trombly was convicted of offering a false instrument for filing in the first degree. Under New York law, a person is guilty of offering a false instrument for filing in the first degree when that person:

> knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation.

N.Y. Penal Law § 175.35.

Establishing the elements of offering a false instrument for filing in the first degree necessarily required proving that Trombly engaged in a dishonest act—*i.e.*, submitting a written instrument containing false information or a false statement with the intent to defraud. Therefore, Trombly's false instrument conviction must be admitted for impeachment under Rule 609(a)(2).

"The presumption under Rule 609(a)(2) . . . is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes." *Estrada*, 430 F.3d at 615. Accordingly, the Court will permit plaintiff to inquire into the essential facts of Trombly's false instrument conviction for impeachment purposes.

Finally, to ensure that Trombly's conviction is only considered for its admissible impeachment purpose, the Court will read the limiting instruction defendants requested at the time that the conviction evidence is admitted.

**D. Lead Counsel**

Plaintiff "requests that the Court have defendants appoint one lead counsel for the examination of each witness to ensure a just and speedy trial, avoid redundancy, and ensure courtroom efficiency." Pl.'s Mem. at 13–14. Defendants have not explicitly opposed this request. *See generally* Defs.' Opp.

At this stage, the Court declines to require that defendants appoint a "lead counsel." Defendants are free to adopt the approach proposed by plaintiff, but if they do not, they are cautioned to avoid eliciting redundant testimony, and plaintiff remains free to object to repetitive questions or questions that seek to elicit cumulative testimony as they arise.

**E. Civilian Clothing and Restraints**

Defendants argue that Farina should be permitted to appear unrestrained and in civilian clothing throughout the course of the trial. Defs.' Mem. at 20. Plaintiff does not object to this request. Pl.'s Opp. at 19.

Some courts in this district have granted similar requests in their entirety, *Brisman v. Volpe*, 2018 WL 3691236, at *4 (N.D.N.Y. Aug. 3, 2018); *Outman v. Waldron*, 2016 WL 4435234, at *3 (N.D.N.Y. Aug. 19, 2016), while others have granted the request as to civilian clothing, but reserved on the issue of restraints until after consultation with the law enforcement officials transporting plaintiff on the morning of trial, *Ash v. Johnston*, 2021 WL 2826426, at *5 (N.D.N.Y. July 7, 2021); *Shepherd v. Smith*, No. 2019 WL 5212883, at *1 n.1 (N.D.N.Y. Oct. 16, 2019).

Accordingly, the Court will grant defendants' request that Farina appear in civilian clothing, but reserve ruling on the issue of restraints until the morning of trial after consultation with Farina's transporting officers.

**F. Defendants' Disciplinary Histories**

Defendants argue that plaintiff should be precluded from discussing their disciplinary histories and personnel files at trial. Defs.' Mem. at 23–25. In opposition, plaintiff has represented that he "does not possess any disciplinary or personnel files that he intends to seek to introduce or question defendants about." Pl.'s Opp. at 21. Accordingly, the Court will deny defendants' motion as moot, without prejudice to renew at trial, if necessary.

**G. Plaintiff's Non-Party Witness Timé Thomas Jr.**

Defendants argue that plaintiff should be precluded from calling Timé Thomas Jr. ("Mr. Thomas") as a non-party witness because Mr. Thomas refused to give testimony at his deposition, and defendants would be prejudicially deprived of an opportunity to prepare to confront his testimony at trial without the benefit of his deposition testimony. Defs.' Mem. at 25–28. In opposition, plaintiff argues that precluding Mr. Thomas from testifying would be premature. Pl.'s Opp. at 21–22.

"Counsel for plaintiff first made contact with Mr. Thomas after reading an online article about Mr. Thomas' interactions with defendant Farina." Pl.'s Opp. at 21. "Counsel for plaintiff then spoke to Mr. Thomas by phone and the information he provided fell squarely within plaintiff's anticipated Rule 404(b) evidence." *Id.* "Plaintiff's counsel thereafter attempted to meet with Mr. Thomas at Sing Sing Correctional Facility, but this meeting was aborted when Mr. Thomas' indicated that he did not wish to go through the strip frisk procedure for a visit." *Id.* Plaintiff's counsel subsequently spoke on the phone with Mr. Thomas, at which time he informed counsel

that he 'would have a target on his back' if he testified about his interactions with Farina." *Id.* "Counsel requested of Mr. Thomas that if he changed his mind, he should reach out." *Id.*

"Given Mr. Thomas' reluctance, plaintiff's counsel also relayed to defense counsel that [they] would be unable to assist with Mr. Thomas' production as he has expressed unwillingness to testify." Pl.'s Mem. at 21. "Defense counsel then received an Order to Produce to have him appear for a deposition." *Id.* at 21–22. "At the deposition, Mr. Thomas denied ever receiving a subpoena and refused to take an oath, or to answer questions." *Id.* at 22.

Plaintiff contends that, "[b]ecause . . . Mr. Thomas may change his mind," the Court should not preclude his testimony, but rather, "allow defendants to take Mr. Thomas' deposition prior to trial, in the event Mr. Thomas decides he does wish to testify." Pl.'s Opp. at 22.

As it stands, plaintiff does not intend to call Mr. Thomas to testify. Accordingly, the Court will deny defendants' motion as moot, without prejudice to renew at trial, if necessary.

### H. References to the "Goon Squad" or the "Beat Up Squad"

Defendants argue that plaintiff should be precluded from referring to defendants as the "goon squad" or the "beat up squad." Defs.' Mem. at 11. In opposition, plaintiff "submits that he should be permitted to testify as to his own truth regarding how incarcerated individuals referred to these defendants." Pl.'s Opp. at 11.

Rule 404 governs the admissibility of character evidence. Fed. R. Evid. 404. Under Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). There are limited exceptions to Rule 404(a)'s prohibition as it pertains to witnesses. Fed. R. Evid. 404(a)(2). For example, Rule 608 provides that character evidence may be admissible to attack a witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608 (a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation

for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.”).

Defendants’ alleged membership in a “beat up squad” is character evidence. Rule 404(a) prohibits plaintiff from offering evidence or testimony that defendants were members of a “beat up squad” to prove that defendants used excessive force against him on the date of the alleged incident. Assuming that defendants testify, Rule 608’s exception to Rule 404(a)’s prohibition will not apply because defendants’ alleged membership in a “beat up squad” is not probative of defendants’ character for truthfulness or untruthfulness. Accordingly, the Court grants defendants’ motion, and plaintiff is precluded from referring to defendants as members of a “beat up” or “goon” squad.

**I. Evidence of Emotional and/or Psychological Harm**

Defendants argue that plaintiff’s emotional distress damages should be limited to garden variety emotional distress, and that he should be precluded from offering evidence of emotional or psychological harm going beyond garden variety emotional distress because he “did not disclose that he would seek any damages for emotional and/or psychological distress,” and he has not “disclosed any mental health professional as a treater and/or expert witness.” Defs.’ Mem. at 11. In opposition, plaintiff argues that he “should be permitted to offer testimony regarding how these events impacted him emotionally without limitation, including how being found guilty of misconduct as a result of defendants’ falsities prolonged his incarceration during a trying time.” Pl.’s Mem. at 11–12.

“[C]ourts in the Second Circuit generally categorize emotional distress damages as either garden-variety, significant, [or] egregious.” *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 126 (2d Cir. 2024) (internal quotation omitted). “In ‘garden variety’ emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes

his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury." *Olsen v. Cnty. of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (internal quotations omitted).

"'Significant' emotional distress claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." *Olsen*, 615 F. Supp. 2d at 46–47 (internal quotation omitted). "Finally, 'egregious' emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." *Id.* at 47 (internal quotations omitted).

Defendants argue that plaintiff should be precluded from offering evidence of emotional distress going beyond "garden variety" because he has not "disclosed any mental health professional as a treater and/or expert witness" or mental health treatment records. Defs.' Mem. at 11–12. In opposition, plaintiff argues that he can seek significant emotional distress damages without expert testimony. Pl.'s Opp. at 11–12.

"It is well-established that courts may award emotional distress damages in section 1983 cases." *Patrolmen's Benevolent Ass'n. v. City of N.Y.*, 310 F.3d 43, 55 (2d Cir. 2002) (citing *Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir. 1993)). But "[a] plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages." *Patrolmen's Benevolent Ass'n*, 310 F.3d at 55. "Rather, the plaintiff's testimony of emotional injury must be substantiated by other evidence that such an injury occurred, such as the testimony of witnesses to the plaintiff's distress . . . or the objective circumstances of the violation itself." *Id.* (internal citation omitted).

Defendants' motion will be denied. The Court declines to preliminarily limit plaintiff's ability to recover emotional distress damages. That being said, it appears unlikely that plaintiff will be able to establish significant emotional distress in the absence of medical records or the testimony of a treating provider. *Miller v. City of Ithaca*, 914 F. Supp. 2d 242, 252 (N.D.N.Y. 2012) (finding "testimony by [a] [p]laintiff, his spouse, his counselor, and his friends and co-workers," and "evidence that [a] [p]laintiff suffered from post[-]traumatic stress disorder and required medication," sufficient to show damages "greater than 'garden variety,'" but less than egregious).

**J. Evidence of Extension of Imprisonment and Family Issues**

Plaintiff argues that, in support of his claim for emotional distress damages, he should be permitted to offer evidence that plaintiff was found guilty of a disciplinary infraction based on defendants' false characterization of the alleged assault, and that "defendants' falsities prolonged his incarceration during a trying time, when his family was managing the diagnosis and treatment for cancer in his young daughter's eye." Pl.'s Opp. at 12. Defendants argue that evidence regarding the extension of his imprisonment and his resulting inability to spend time with his daughter should be excluded as irrelevant to plaintiff's remaining claims. Defs.' Mem. at 12–13.

As defendants point out, plaintiff's claims that Bause deprived him of time with his family and prolonged his incarceration by falsely accusing plaintiff of assault were dismissed. Dkt. No. 77 at 4–8. Only plaintiff's claims of excessive force remain. Dkt. No. 158 ("Joint Pre-Tr. Stip."). The prolongation of plaintiff's sentence was not a consequence of defendants' allegedly unlawful use of force; it was a consequence of the disciplinary proceedings that were initiated when Bause allegedly falsely reported that plaintiff had assaulted him. Dkt. No. 77 at 2–3, 4–6. Bause's misbehavior report breaks the chain of causation between the alleged uses of force and the prolongation of plaintiff's incarceration. Accordingly, the Court will grant defendants' motion,

and plaintiff will be precluded from adducing evidence that defendants' allegedly excessive use of force caused him emotional distress by prolonging his incarceration and depriving him of time with his daughter.

**K. Bifurcation of Punitive Damages Proceeding**

"Defendants move, pursuant to Federal Rule of Civil Procedure 42, to bifurcate the punitive damages portion of the trial." Defs.' Mem. at 13–14. In opposition, plaintiff argues that "bifurcating punitive damages is unnecessary, would prolong the trial, and would not promote efficiency given that almost all of the evidence relevant to the award of punitive damages is also relevant to the question of liability." Pl.'s Opp. at 13–14.

The Court declines to make a preliminary ruling on whether the punitive damages portion of the trial will be bifurcated. Accordingly, defendants' motion will be denied without prejudice to renewal at a later stage.

**L. Dr. Feldman's Testimony**

In opposition to defendants' motions in limine, plaintiff asserts a late-breaking motion seeking to require that defendants present the testimony of defense expert Dr. Jacob Feldman through his pre-recorded deposition rather than calling him to testify virtually at trial. Pl.'s Opp. at 22–23. In response, defendants argue that plaintiff's position "finds no support in the record or under the Federal Rules of Civil Procedure." Dkt. No. 166 at 3.

According to plaintiff, prior to "receiving defendants' witness list, . . . it was [his] understanding that the testimony of Dr. Feldman, who lives out-of-state in Arizona, would be presented via his preserved video deposition." Pl.'s Opp. at 22. "Indeed, the parties exchanged designations regarding the same." *Id.* Consequently, "[p]laintiff submits that defendants should not now be permitted to secure Dr. Feldman's live testimony" because "allow[ing] defendants to now offer Dr. Feldman's testimony live, would prejudice plaintiff and permit defendants' counsel

an opportunity to rehabilitate their expert witness by preparing him for a cross-examination of which they have advance knowledge." *Id.* at 23.

Plaintiff has not offered any record evidence that defendants waived their right to call Dr. Feldman at trial. As the parties are aware, Dr. Feldman is an out-of-state non-party witness. As such, he is not within the Court's subpoena power. Indeed, under the applicable subsection of Federal Rule of Civil Procedure 45, "[a] subpoena may command a person to attend a trial . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." *See* Fed. R. Civ. P. 45. In light of this concern, defendants explain that they "provided [p]laintiff with designations for Dr. Feldman's testimony in the event that Defendants were unable to secure Dr. Feldman's attendance at trial." Dkt. No. 166 at 4.

Accordingly, the Court declines plaintiff's motion to require that Dr. Feldman's testimony be admitted through his videotaped deposition. To the extent that Dr. Feldman's testimony at trial diverges from his videotaped deposition, plaintiff is free to cross-examine him on those discrepancies and, where appropriate, impeach him with his prior inconsistent testimony.

## IV. CONCLUSION

Beyond the issues previously discussed, the Court notes that if a party opens the door on direct examination for testimony that this order would otherwise preclude, cross-examination as to that issue will be permitted.

Therefore, it is

ORDERED that

1. Defendants' motions *in limine* (Dkt. Nos. 138, 141, 145) are GRANTED in part and DENIED in part;

2. Plaintiff's motions *in limine* (Dkt. No. 151) are GRANTED in part and DENIED in part;
3. At or before 1:00 p.m. on November 6, 2026, plaintiff is directed to file a notice designating each portion of the recorded interviews of Trombly he intends to offer at trial. Plaintiff's designations should include the interview date and the start and end timestamp of the portion being offered, together with a short summary of the contents of the specific portion of each interview and statement of the purpose for which, and the context in which, each portion will be offered; and
4. Defendants are directed to submit their objections to plaintiff's designations, if any, at or before 8:00 a.m. on November 9, 2026.

**IT IS SO ORDERED.**

Dated: November 4, 2026
Utica, New York

Anthony J. Brindisi
U.S. District Judge