# SIVIN, MILLER & ROCHE LLP

Attorneys at Law
20 Vesey Street
Suite 1400
New York, New York 10007

**Glenn D. Miller**
**Edward Sivin***
**David Roche**
**Lissa Green-Stark**
*also member of NJ Bar

**Phone: (212) 349-0300**
**Fax: (212) 406-9462**


November 6, 2026

**<u>VIA ECF</u>**

The Honorable Anthony J. Brindisi
Alexander Pirnie Federal Bldg. and U.S. Courthouse
10 Broad Street
Utica, NY 13501

Re: *Alvarez v. Bause, et al*, 22-cv-186 (AJB/DJS)

Your Honor:

Plaintiff respectfully submits this letter as directed by the Court's November 4, 2026 Order on the Motions *in Limine*, as well as to clarify issues raised by the Order and at the pre-trial conference.

First, plaintiff seeks to clarify the scope of the Court's 404(b) ruling and the purpose for which plaintiff listed many of the Brooks related materials as exhibits. Regarding scope, plaintiff understands the Court's ruling to permit counsel to inquire into the parallels between the Brooks incident—without referring to it by name—on direct of defendants Trombly and Farina. These parallels include that plaintiff, like Brooks, was unjustifiably assaulted with OC spray to support the false claim that he was being combative, and make the force appear more legitimate. Also, like in the Brooks case, all force was documented as having occurred in the location where the call for a response occurred, for plaintiff in the shower, for Brooks on the walkway, when the real force occurred elsewhere. Further, as in the Brooks case, specified officers, for plaintiff: Bause, in the Brooks case: Anzalone, Kessler, and Kieffer, "owned the force" and were the only officers to prepare paperwork. Further, Trombly confirmed in his statements to investigators certain pattern and practice evidence generally relating to the covering up of excessive force, including, *inter alia*, the following conduct, which may be applicable to all defendants, if so established:

- keeping reports short and simple;
- limiting the reported force to one location, with the least amount of people identified;
- using OC spray to make force appear justified;
- justifying facial injuries by attributing them to inmates falling face first;
- ensuring that the cover story aligns with the injuries and need for an ambulance;

- the culture of "blue against green";
- the culture of suppressing the truth/risks of being truthful; and
- the culture of failing to intervene or report force.

With respect to the exhibits plaintiff listed in support of the foregoing patterns and practices, plaintiff is not seeking to affirmatively offer Exhibits P-22-24, 28-29, and 31-36 pursuant to 404(b), but rather listed these exhibits, along with the Trombly recordings, in support of plaintiff's argument that he has good-faith basis to inquire into these subjects, and listed these records as exhibits to the extent they may need to be relied on for impeachment or to refresh a witnesses' recollection, depending on the answers elicited at trial.

With respect to the video interviews of Trombly, should the Court permit plaintiff to affirmatively offer portions of the videos pursuant to Rule 404(b), plaintiff has prepared the following chart indicating the portions of the video which plaintiff requests the Court review for affirmative admission as Rule 404(b) evidence. Plaintiff contemplates offering this evidence through Clark Farry, an investigator who interviewed defendant Trombly.

| AUDIO OFFERED | 404(B) PURPOSE |
|---|---|
| **Exhibit P-25 – January 15, 2025 (Audio 1 of 2)** | |
| 1:29:21-1:29:51 | Discussing the culture of suppressing the truth or risk consequences. Offered to establish this pattern and practice. |
| 3:46:50-3:49:12 | Discussing keeping uses of force short and simple; having only a few officers take the force; and documenting force only in the originating location. Offered to establish these patterns and practices. |
| 3:53:29-3:54:03 | Discussing keeping uses of force short and simple; and having only a few officers take the force. Offered to establish these patterns and practices. |
| 3:55:45-3:56:55 | Discussing documenting force only in the originating location; and ensuring paperwork aligns with and justifies injuries. Offered to establish these patterns and practices. |
| 3:57:17-3:57:41 | Discussing keeping uses of force short and simple; and having only a few officers take the force. Offered to establish these patterns and practices. |
| 3:58:27-3:59:00 | Discussing documenting force only in the originating location where the response was called to. Offered to establish this pattern and practice. |

| | |
|---|---|
| 4:10:32-4:15:00 | Discussing the culture of suppressing the truth and discussing the consequences. Offered to establish this practice. |
| **Exhibit P-26, January 23, 2025 Audio (1 of 2)** | |
| 18:35-19:10 | Discussing the status quo regarding intervening and the risks associated. Offered to establish this pattern and practice. |
| 29:44-29:59 | Discussing the culture of suppressing the truth. Offered to establish this pattern and practice. |
| 1:47:00-1:47:59 | Discussing keeping uses of force short and simple; having only a few officers take the force. Offered to establish these patterns and practices. |
| 1:49:00-1:49:33 | Discussing the practice of justifying facial injuries by the claim that an II fell face first. Offered to establish this pattern and practice. |
| 2:21:18-2:21:47 | Discussing the culture of "Blue against Green." Offered to establish this practice. |
| **Exhibit P-27, January 30, 2025 Audio** | |
| 1:46:40–1:48:23 | Discussing the practice of officers unnecessarily using of OC spray to portray force as legitimate and to support claim of aggressive / combative II. Offered to establish this practice. |

Regardless of whether the Court permits the foregoing portions of the video to be affirmatively offered, plaintiff should still be permitted to utilize the videos for impeachment purposes, should Trombly testify in a manner which contradicts his prior statements.

Moreover, on cross-examination, counsel should be permitted to question Farina and Trombly regarding specific acts of dishonesty that occurred in relation to the Brooks incident pursuant to Rule 608(b), separately and independently from the affirmative admissibility of such evidence under 404(b) or Rule 609. The trial court has discretion "to permit cross-examination (but not extrinsic evidence) as to 'specific instances of [the witness's] conduct' if those instances will be 'probative of [the witness's character for] truthfulness or untruthfulness.." *Hynes v. Coughlin*, 79 F.3d 285, 293 (2d Cir. 1996) (citing Fed. R. Evid. 608(b)); *see also, McKinley v. Moore*, No. 9:21-cv-678 (BKS/CFH), 2024 U.S. Dist. LEXIS 9708, at *13 (N.D.N.Y. 2024) (citing *Tapp v. Tougas*, No. 05-cv-1479, 2018 WL 1918605, at *3, 2018 U.S. Dist. LEXIS 66743, at *9 (N.D.N.Y. Apr. 20, 2018)); *Gogol v. City of N.Y.*, 2017 U.S. Dist. LEXIS 221874, at *9 (S.D.N.Y. 2017). In *Hynes*, the Second Circuit provided the following examples of cross-examination which had been upheld:

> into an attorney's disbarment, *see United States v. Weichert*, 783 F.2d 23, 25 (2d Cir.) *cert. denied*, 479 U.S. 831, 93 L. Ed. 2d 64, 107 S. Ct. 117 (1986), into a witness's failure to disclose a prior arrest on his bar application, *see United States v. Schatzle*, 901 F.2d 252, 255-56 (2d Cir. 1990), and into a prior finding by an

> Immigration Judge that the witness's testimony in a deportation proceeding was not credible, *see United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir.), *cert. denied*, 464 U.S. 840 (1983); *see also United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995) (upholding cross-examination into a defendant's alleged acts of fraud, bribery, and embezzlement)." *See Hynes*, 79 F.3d at 293-294.

All that is required to permit such inquiry is a good faith basis. *Hynes*, 79 F.3d at 294.

Plaintiff has a good-faith basis to allege that Farina and Trombly engaged in specific acts of dishonesty as they relate to the Brooks matter, which plaintiff should be permitted to inquire into on cross examination—again without reference to Brooks by name. For example, Farina admittedly failed to document his involvement in using force on Brooks, despite DOCCS' policy which established a duty to prepare such reports. This amounts to falsifying of records by omission and is probative of his character for untruthfulness. *See McKinley*, 2024 U.S. Dist. LEXIS 9708, at *13-14 (allowing inquiry into a finding of guilt for providing false information after disciplinary proceedings because it related to a specific instance of conduct that was probative of the witness's character for truthfulness); *Jeanty v. Cerminaro*, No. 6:16-cv-00966 (BKS/TWD), 2021 U.S. Dist. LEXIS 124089, at *58-59 (N.D.N.Y. 2021) (finding plaintiff could inquire into an internal investigation which found the defendant had violated policies regarding truthfulness and falsifying reports because it was clearly relevant to propensity for truthfulness); *Tapp*, 2018 U.S. Dist. LEXIS 66743, at *10 (allowing inquiry into the plaintiff's prison infraction for false information). Similarly, plaintiff should be permitted to question Trombly on his involvement in falsifying documents in the Brooks matter pursuant to both Rule 609 and Rule 608.

Thank you for your consideration.

Very truly yours,

Lissa Green-Stark

cc: All Counsel (via ECF)